UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND


CIVIL ACTION NO. 11-01-GWU


WILLIAM DANIEL LYKINS,                                              PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                       DEFENDANT.


## INTRODUCTION

William Lykins brought this action to obtain judicial review of an administrative decision denying his applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.   Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.   If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

1

3.     The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

2

11-01  William Daniel Lykins

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

3

11-01  William Daniel Lykins

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

4

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ."
Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).   If this non-exertional
impairment is significant, the Commissioner may still use the rules as a framework
for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);
however, merely using the term "framework" in the text of the decision is insufficient,
if a fair reading of the record reveals that the agency relied entirely on the grid.  Id.
In such cases, the agency may be required to consult a vocational specialist.
Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).   Even then, substantial
evidence to support the Commissioner's decision may be produced through reliance
on this expert testimony only if the hypothetical question given to the expert
accurately portrays the plaintiff's physical and mental impairments.   Varley v.
Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Lykins, a former grocery
stocker, city laborer, lumber yard laborer and auto mechanic, suffered from
impairments related to asthma, left eye blindness, functional illiteracy, and anxiety.
(Tr. 13, 19).  Despite the plaintiff's impairments, the ALJ determined that he retained
the residual functional capacity to perform a restricted range of work at all exertional
levels.  (Tr. 17).  Since the claimant would still be able to perform his past relevant

work as a grocery store stocker, as well as a significant number of other jobs, he could not be considered totally disabled.  (Tr. 19-20).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

In determining that Lykins could return to his past relevant work as a grocery store clerk, the ALJ relied heavily upon the testimony of Vocational Expert Donald Woolwine.  The hypothetical question presented to Woolwine included an ability to perform work at all exertional levels restricted by such non-exertional limitations as (1) functional illiteracy; (2) a "moderate" limitation in understanding, remembering and carrying out detailed instructions, maintaining attention and concentration for extended time periods, interacting appropriately with the general public, and responding appropriately to changes in the work setting; (3) a limitation to simple, non-detailed tasks; (4) a limitation in maintaining attention and concentration for two-hour segments; (5) a need to avoid work requiring depth perception or peripheral vision to the left; and (6) a need to avoid environments containing excessive dust, fumes or gases.  (Tr. 55).  The ALJ also indicated that the individual would be able to complete a normal workday and workweek without excessive interruptions from psychologically-based symptoms, demonstrate adequate judgment to make decisions, respond appropriately to supervisors and coworkers

in a setting that was task-oriented versus public-oriented and would be able to maintain appropriate dress and hygiene suitable for the workplace. (Id.). In response, Woolwine reported that such a person would be able to perform Lykins's past work as grocery stocker. (Tr. 56). The expert also identified a significant number of other jobs which could still performed. (Tr. 56-57). Therefore, assuming that the vocational factors considered by Woolwine fairly characterized the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error. Dr. Barry Burchett, an examining consultant, reported a diagnostic impression of asthma, chronic back pain with intermittent radicular pain into the left thigh and a visual impairment of the left eye in September of 2006. (Tr. 227). The physician did not address the issue of functional limitations. (Tr. 224-230). The restrictions concerning no work involving depth perception and the need to avoid exposure to environmental pollutants would accommodate the plaintiff's problems with asthma and the visual impairment. More severe physical restrictions than those found by the ALJ were not indicated by such treating and examining sources as Dr. Percival Pajel of Appalachian Regional Healthcare (Tr. 190-215), Dr. Eiyad Alchureiqi of Appalachian Regional Healthcare (Tr. 298-322), Dr. Laura Faughn of Appalachian Regional Healthcare (Tr. 399-424

7

434-446), the staff at the St. Claire Medical Center (Tr. 270-292), the staff at Cave Run Surgical Associates (Tr. 293-297),  the staff at Central Baptist Hospital (Tr. 323-349), and the staff at the Morehead Clinic (Tr. 376-385).  Dr. David Swan reviewed the record and opined that the medical evidence did not reveal the existence of a "severe" physical impairment.  (Tr. 269).  The ALJ's findings with regard to Lykins's physical condition were consistent with these opinions.

Lykins asserts that the ALJ erred in rejecting the opinion of Melissa Leuenberger, a treating source.  Leuenberger identified extremely severe physical restrictions including an inability to work for more than one hour a day.  (Tr. 397-398).  The ALJ noted a number of reasons why the opinion of Leuenberger was rejected including the fact that she appeared to rely upon the plaintiff's subjective complaints, had not performed a clinical examination, and the opinion was inconsistent with the modest findings of the other medical sources of record.  (Tr. 19).  These are strong grounds to reject the opinion.

Furthermore, although the ALJ assumed that she was a physician (Id.), Leuenberger appears to be a nurse-practitioner rather than a licensed medical doctor and, so, would not be an "acceptable medical source" under the administrative regulations whose opinion could be binding on the administration. 20 C.F.R. § 404.1513.  The record does contain several references to Leuenberger being a medical doctor.  (Tr. 356-359, 364-367, 374, 425, 427-431).  However, she

is also listed as an Advanced Registered Nurse Practitioner (ARNP) at other times. (Tr. 392, 447, 449).  The Kentucky Board of Medical Licensure does not list a Dr. Leuenberger as being a licensed physician in the Commonwealth of Kentucky. Kentucky Board of Medical Licensure http://kbml.ky.gov/board/phys.htm, viewed October 26, 2011.  An internet search for Melissa Leuenberger reveals that a Melissa N. Leuenberger, ARNP, practices in West Liberty, Kentucky. http://www.healthgrades.com/provider/melissa-leuenberger-x4g79/, viewed October 26, 2011. The Appalachian Regional Hospital in West Liberty is where Leuenberger treated Lykins.  (Tr. 353).  This is an additional  factor militating against giving her opinion controlling weight.  Under these circumstances, the ALJ properly rejected Leuenberger's opinion.

The ALJ also dealt properly with the evidence of record relating to Lykins's mental condition.  Psychologist William Rigby examined the plaintiff and diagnosed an anxiety disorder, disorders in reading and mathematics and mild mental retardation.  (Tr. 221-222).  Rigby opined that the claimant would have a "fair" ability to deal with simple instructions, relate to others including fellow workers and supervisors, and tolerate stress and work pressures.  (Tr. 222).  These restrictions are essentially compatible with those presented in the hypothetical question.

Psychologists Ilze Sillers (Tr. 231-232) and Jane Brake (Tr. 263-264) each examined the record and opined that Lykins would be "moderately" limited in

11-01  William Daniel Lykins

dealing with detailed instructions, maintaining attention and concentration for extended time periods, interacting appropriately with the general public and responding to changes in the work setting.  Sillers indicated that, despite these restrictions, Lykins would be able to understand, remember and carry out simple tasks, complete a normal workweek without interruption from psychologically-based symptoms, demonstrate adequate judgment and make adequate decisions, respond appropriately to supervisors and co-workers in a task-oriented versus public-oriented setting, maintain adequate hygiene and dress appropriate for the work place, adapt to routine changes and avoid work hazards on a sustained basis. (Tr. 233).  The ALJ's findings were consistent with these opinions as well.  Thus, the hypothetical question fairly depicted the plaintiff's condition.

Lykins argues that the ALJ erred in concluding that he did not meet the requirements of Section 12.05C of the Listing of Impairments concerning mental impairments.  This Listing requires a claimant to produce "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R., Part 404, Subpart P, App. 1, § 12.05C.  The regulations further provide that "mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. the evidence supports onset of the impairment before

age 22."  20 C.F.R., Part, 404, Subpart P, App. 1, § 12.05.  To meet the Listing, a claimant must produce a valid IQ score within Listing range, demonstrate the existence of another mental or physical impairment imposing significant work-related limitations and show that the deficit in adaptive functioning manifested itself before the age of 22.

In the present action, intelligence testing administered by Rigby produced a Verbal IQ score of 66, a Performance IQ score of 63, and a Full-Scale IQ score of 62, all scores within Listing range.  (Tr. 221).  The examiner indicated that Lykins gave good effort during the testing and, so, these scores would appear valid.  (Id.).  The plaintiff's problems with asthma, left eye blindness, and anxiety, all found to be "severe" impairments by the ALJ, satisfy the requirement for another mental or physical impairment imposing significant work-related restrictions.  The only real issue concerns whether these deficits in adaptive functioning were manifested prior to the age of 22.

Lykins argues that a number of factors show that he satisfies the Listing requirement demonstrating deficits in adaptive functioning prior to the age of 22.  Achievement testing administered by Rigby and noted to be valid indicated that the plaintiff functioned at the second grade level in reading and spelling and at the third grade level in arithmetic.  (Tr. 220).  The ALJ himself found the claimant to be functionally illiterate.  (Tr. 13).  School records from Morgan County indicate that

11-01  William Daniel Lykins

Lykins was failing all his classes at the age of 15.  (Tr. 184-185).  However, the ALJ noted that the vocational expert testified that the plaintiff's auto mechanic work had been skilled.  (Tr. 14, 54).  The claimant also testified that he had passed a written driver's test.[1]  (Tr. 14, 28).  These factors influenced the ALJ in determining that the required deficits in adaptive functioning had not been proven.   (Tr. 14).

The undersigned agrees with the ALJ that performance of skilled work is not consistent with a finding of lifelong mental retardation.   The Diagnostic and Statistical Manual for Mental Disorders (4th Ed.--Text Revision) (DSM-IV-TR) indicates that a history of unskilled and even semiskilled work can be compatible with a diagnosis of mild mental retardation.  DSM-IV-TR, p. 43.  Significantly, a history of skilled work is not mentioned as being consistent with a history of lifelong mild mental retardation.  While Rigby diagnosed mild mental retardation (Tr. 222), the claimant did not tell the examiner about his history of performing this type of work.  (Tr. 219).  He only mentioned his employment as a city worker and at a lumber yard and denied employment for the past six years.  (Id.).  Yet, the Work History Report reveals his employment as a self-employed mechanic between June, 2003 and December, 2005.  (Tr. 123).  He actually stopped working less than a year prior to Rigby's August, 2006 examination.  (Tr. 216).  During the hearing, the claimant reported he stopped performing this work because of breathing difficulty

_____

[1]The plaintiff indicated that he took the test a number of times.  (Tr. 28).

12

11-01  William Daniel Lykins

related to his asthma condition rather than an inability to perform the work because it was beyond his mental capacity.  (Tr. 31, 34).   Lykins stated that he could do body work, brake jobs, perform tune ups and "pretty much fix anything and everything" on a car.  (Tr. 29-30).  Finally, Sillers, the reviewer, indicated that she did not believe that Rigby's diagnosis of mild mental retardation was well supported. (Tr. 233).  Therefore, under these circumstances, the court must reject the plaintiff's argument.

The undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 3rd day of November, 2011.

Signed By:

_G. Wix Unthank_

**United States Senior Judge**

13